UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**AMANDA PAGE FLEMING,**          CASE NO.:

    **Plaintiff,**

v.

**JOHN TATE, SHERIFF,
HOLMES COUNTY, FLORIDA,**

    **Defendant.**
_____/

## COMPLAINT

Plaintiff, AMANDA PAGE FLEMING, hereby sues Defendant, JOHN TATE, SHERIFF, HOLMES COUNTY, FLORIDA, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under 29 U.S.C. §794 (The Rehabilitation Act of 1973) and 42 U.S.C. §1981a. Plaintiff's claim for gender discrimination is brought under 42 U.S.C. §1983, which authorizes actions to redress the deprivation of law, of rights, privileges, and immunities secured to the Plaintiff by the Fourteenth Amendment of the Constitution and laws of the United States, and by 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

2.  Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). This is an action involving claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3.  At all times pertinent hereto, Plaintiff, AMANDA PAGE FLEMING, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class because of her gender (female) and because of her association with a disabled person, Tyler Harrison.

4.  At all times pertinent hereto, Defendant, JOHN TATE, has been Sheriff of the HOLMES COUNTY SHERIFF DEPARTMENT, which has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

**CONDITIONS PRECEDENT**

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

**STATEMENT OF THE ULTIMATE FACTS**

6. Plaintiff began her employment with Defendant as a dispatcher in October, 2013. She became a certified law enforcement officer in April 2014 and because a deputy with Defendant thereafter until her termination/constructive termination on or around January 3, 2018.

7. Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her gender (female) and her association with a disabled person who has an actual or perceived disability and record of impairment.

8. The mistreatment came at the hands of specifically but not limited to Sheriff John Tate and Undersheriff Michael Raley, both of whom are males.

9. Plaintiff worked for almost four years with Defendant as a deputy. John Tate was a Captain during this time prior to his election as Sheriff, in late 2016. He took office in January 2017.

10. While he was a Captain and continuing thereafter until he became Sheriff, Tate sexually harassed Plaintiff. In 2016, after Tate began campaigning

for the position of Sheriff, Tate began to text message Plaintiff insinuating if not directly stating that he wanted to meet up with Plaintiff for what she understood was sex. Tate sent her at least a couple of these messages in 2016 and Plaintiff declined his offer.

11. Around the end of 2016, Ken Tate, an investigator with the Defendant, grabbed Plaintiff's crotch. Plaintiff reported this improper conduct to then Sheriff Brown and Captain Michael Raley. This was right around the time that John Tate was elected Sheriff and after he found out about Plaintiff's report of sexual harassment by Ken Tate, he asked Plaintiff not to file anything or pursue this further because he (John Tate) would "handle it". Michael Raley was also involved in discussions with Plaintiff about Ken Tate's actions and in January 2017, when John Tate took office, he threatened to move Plaintiff out of the narcotics investigation unit.

12. At that time, because Plaintiff was very upset about being moved from investigations, she was left in investigations working with Ken Tate. Ken Tate was never relocated nor disciplined for his gross and horrible action involving Plaintiff but it was obvious that he was mad at her for reporting his improper behavior.

13. Around October 2017, Raley called Plaintiff and Tyler Harrison into his office to ask if they were having a relationship. They both said "no."

4

14. On January 1, 2018, because of his PTSD, Harrison began drinking a lot and taking medications and shot himself. Rather than recognizing Harrison's mental health condition, he was fired/forced to resign in or around the first week of April 2018. Plaintiff was believed to be in a relationship with and/or associated with Harrison prior to and on January 1, 2018.

15. On or around January 2, 2018, Raley went to Plaintiff's residence, at John Tate's direction, and told that she had 24 hours to decide to quit or be fired. Raley picked up her badge and vehicle at that time. But she was only given around 12 hours to come into the office and resign or be fired. Upon Plaintiff arrival at the office on or around January 3, 2018, Raley told Plaintiff that she was going to be put under an internal investigation and fired. He told her to use the office computer to prepare a resignation letter and dictated to her what was included in the resignation letter. Plaintiff was under significant duress and crying at the time. She was also falsely told that she could return to work with the Sheriff's Office after sitting out one year. That proved to be false. After her termination, Plaintiff called John Tate about being rehired and he told her, around one year after she was fired, that she was not permitted to return to work with Defendant.

16. Plaintiff maintains that it was her association with Tyler Harrison and/or her complaint of discrimination against Ken Tate that resulted in her termination.

17. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws cited above.

## COUNT I
## ASSOCIATIONAL HANDICAP DISCRIMINATION

18. Paragraphs 1-17 are re-alleged and incorporated herein by reference.

19. This is an action against Defendant for disability discrimination under 29 U.S.C. §794.

20. Plaintiff has been the victim of discrimination on the basis of her association with a person with an actual and/or perceived disability, Tyler Harrison. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated employees who did not have such an association with a person with an actual or perceived disability.

21. At all times pertinent hereto, Defendant received and utilized in conducting its functions as provided by law federal financial assistance, such assistance received for the purposes of assisting some or all of the programs and activities of Defendant. On information and belief, the funds received constituting

6

such federal financial assistance were deposited into a general fund or account managed by or on behalf of Defendant.

22. Defendant is liable for the differential treatment of Plaintiff due to her association with a person who was actually and/or perceived to be disabled, which adversely affected the terms and conditions of Plaintiff's employment with Defendant.

23. Defendant controlled the actions and inactions of the persons making decisions effecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

24. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

25. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

26. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability.

27. As a direct and proximate result of Defendant's conduct described above,

28. Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## COUNT II
## GENDER-BASED DISCRIMINATION
## (Equal Protection Clause of the Fourteenth Amendment)

29. Paragraphs 1-17 are re-alleged and incorporated herein by reference.

30. This is an action against Defendant for gender discrimination brought under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution brought through 42 U.S.C. §1983. Defendant is a person under the laws identified above.

31. Defendant, its agents and employees, under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, owed Plaintiff a duty to protect her from becoming a victim of discrimination on the basis of her gender.

32. Plaintiff was discriminated against and treated differently than similarly situated male employees and Defendant intended such discriminatory treatment.

33. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

34. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, and in violation of the laws set forth herein.

35. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to harassment, hostile work environment, and other adverse actions including Plaintiff's termination.

36. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender and under the laws cited herein.

37. The discrimination complained of herein does not further an important government interest that is substantially related to that interest and there is no exceedingly persuasive justification for the discriminatory policies and practice.

38. Defendant Sheriff was the final policymaker regarding the discrimination against Plaintiff as set forth above.

39. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## COUNT III
## RETALIATION
### (Under the Fourteenth Amendment)

40. Paragraphs 1-17 are re-alleged and incorporated herein by reference.

41. This is an action against Defendant for retaliation against Plaintiff after she objected to sexual harassment brought under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983. Defendant is a person under the applicable law.

42. Defendant, its agents and employees, under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, took action against Plaintiff after she reported sexual harassment based on her gender.

43. While there was ongoing sexual harassment of the Plaintiff, Defendant, through its final policy maker, Tate, retaliated against Plaintiff after she reported and/or objected to the gender discrimination and a hostile work environment within Defendant. In other words, Defendant maintained and reinforced the sexually hostile environment in connection with its retaliatory acts and Defendant's conduct was a mixture of retaliation and maintenance of the sexual harassment. No action was taken against Ken Tate and efforts were made to move Plaintiff to a different position, one she did not want. Rather than moving Ken Tate, Plaintiff continued to work with him although his anger was apparent.

44. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

45. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, and in violation of the laws set forth herein.

46. The final policymaker for the Defendant, John Tate, made the ultimate decision to terminate Plaintiff.

47. The retaliation after reporting and/or objecting to gender discrimination and sexual harassment affected a term, condition, or privilege of

11

Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to adverse actions including without limitation Plaintiff's termination.

48. Defendant's conduct and omissions constitutes retaliation under the laws cited herein.

49. The retaliation complained of herein does not further an important government interest that is substantially related to that interest and there is no exceedingly persuasive justification for the retaliation cited herein.

50. Moreover, the persons making the employment decisions adversely affecting Plaintiff were final policymakers for Defendant and acted pursuant to that final policymaking authority in making the decisions adversely affecting Plaintiff. The actions complained of above resulted in the constitutional violations alleged herein. Defendant, through its decisionmakers and other upper-level personnel, including without limitation John Tate, acted under color of state law when it made the decision and/or participated in the adverse employment actions against Plaintiff.

51. The conduct engaged in by Defendant was in callous and willful disregard of Plaintiff's constitutional rights.

52. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 3rd day of January, 2018

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF